CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 21 2006

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WAL-MART STORES, INC., | ) |
| Plaintiff, | ) Civil Action No. 7:06CV00133 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| J.A. FIELDEN CO., INC., | ) By: Hon. Glen E. Conrad |
| MATTERN & CRAIG, INC., | ) United States District Judge |
| FROEHLING & ROBERTSON, INC., | ) |
| GEOTECHNICS, INC., and | ) |
| G.W. WYATT CONTRACTING, L.L.C. | ) |
| Defendants. | ) |

This matter is before the court on the defendants' motions to dismiss. The parties presented their arguments at a hearing conducted on Thursday, June 29, 2006.

**Factual and Procedural Background**

Wal-Mart contracted with defendants J.A. Fielden Co. ("Fielden"), Froehling & Robertson ("F&R"), and Mattern & Craig ("M&C") for the construction of a commercial property and parking lot on a site in Bonsack, Virginia. Wal-Mart's contract with Fielden was for construction services. The contract between Wal-Mart and F&R was for construction testing. The contract with M&C designated that firm to provide design services. In the performance of their contractual duties to Wal-Mart, M&C and Fielden engaged Geotechnics and G.W. Wyatt ("Wyatt"), respectively, as subcontractors. The contract between M&C and Geotechnics apparently does not feature a statement indicating that Wal-Mart is an intended third party beneficiary. The contract between Fielden and Wyatt, however, identifies Wal-Mart as a third party beneficiary.

Subsequent to the construction of the parking lot, the slopes eroded, causing soil displacement and unexpected movement of portions of the lot. Wal-Mart has sued Fielden, F&R, and M&C for breach of contract, constructive fraud, and breach of express and implied warranties. Wal-Mart has sued Geotechnics and Wyatt for breach of contract based on Wal-Mart's third party beneficiary status, breach of implied warranty, and constructive fraud. Wal-Mart also asserted a claim for attorney's fees against all defendants, as allowed by contract or by law.

**Discussion**

Wal-Mart's claims are based in both contract and tort law. As to the contract counts, F&R, Geotechnics, M&C, and Wyatt assert that the claims for breach of implied warranty are improper. M&C also contends that the claim of breach of express warranty should be dismissed. Geotechnics disputes Wal-Mart's claim that Wal-Mart enjoys the status of third party beneficiary under Geotechnics' contract with M&C. With respect to the tort claim, Fielden, F&R, Geotechnics, M&C, and Wyatt all argue that the claim for constructive fraud should be dismissed.

*Breach of Express Warranty*

M&C asserts that Wal-Mart does not state a claim for breach of express warranty because their contract lacked language to indicate that M&C undertook to ensure that the design was appropriate to the site and available fill materials. M&C is incorrect in its contention that no such express promise exists in the contract. See Exh. A., Memorandum in Support of Mattern & Craig's 12(b)(6) Motion. A complaint that alleges an express warranty, rather than just the legal bases upon which a warranty may have been created, is generally sufficient to withstand a motion to dismiss. See Hubbard v. Dresser, 271 Va. 117, 123-24 (2006) (concluding that a complaint

2

that alleged that the defendant "'expressly warranted' that the diesel fuel dispensing equipment it supplied to Jones & Frank would be 'free of defects in design, workmanship and material,' and that the fuel pump malfunctioned '[w]ithin days' and 'never operated properly'" was sufficient). Here, Wal-Mart has alleged that "M&C represented and warranted to Wal-Mart ... that it would provide Wal-Mart in Bonsack, Virginia, with a design for the project that was appropriate for the site and the fill materials available and that would be designed consistent with the applicable standard of care." Complaint, at ¶ 51. Wal-Mart further alleged that "M&C failed to design the project properly," resulting in slopes that failed to hold. Complaint, at ¶ 15. These allegations are sufficient under the rule enunciated in Hubbard.

Furthermore, in the Consultant's Project Understanding, M&C contracted to provide "site development surveying and engineering services for the project," and stated that it would "[p]repare preliminary layout drawings ... show[ing] conceptual roadway base lines and edges of pavement, approximate limits of construction, approximate proposed right-of-way limits, proposed grade lines," etc.; "[c]omplete the Final Construction Plans...includ[ing] all data necessary for construction, including but not limited to: alignment, grades, drainage, public utility relocations, typical sections, right-of-way," etc.; and "[d]evelop specifications and any special provisions for the project as may be required." Exh. A., Memorandum in Support of Mattern & Craig's 12(b)(6) Motion, at 12. These provisions suggest that M&C did contractually agree to provide construction plans appropriate to the site. Thus, the motion to dismiss Count VIII will be denied.

*Third Party Beneficiary Claim*

Geotechnics argues that Wal-Mart has not shown that there was any intent on the part of M&C and Geotechnics to make Wal-Mart a third party beneficiary. As the Virginia Supreme

3

Court stated unequivocally in Prof'l Realty Corp. v. Bender, 216 Va. 737, 222 S.E.2d 810 (1976), "[t]he third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." Id. at 739; see also BIS Computer Solutions, Inc. v. City of Richmond, 122 Fed. Appx. 608, 612 ("Unless the parties otherwise specify, the sole intended beneficiaries of any such contract are the property owner and the contractor."). In support of its argument, Geotechnics notes that it did not assume any obligations to Wal-Mart in its agreement with M&C. However, neither Geotechnics nor Wal-Mart has produced a copy of the contract between Geotechnics and M&C, rendering dismissal inappropriate at this time.[1]

To demonstrate the intent of M&C and Geotechnics to benefit Wal-Mart through their contract, Wal-Mart notes that in its own contract with M&C, the design firm agreed that "all of ... [M&C's] agreements with Subconsultants shall expressly incorporate conditions similar to the attached Schedule of Conditions which are accepted by ... [M&C], and such conditions shall bind Subconsultants to perform the obligations herein for the benefit of ... [Wal-Mart]." Proposal and Agreement for Professional Services, at 1. Although this obligation undertaken by M&C does not bind subcontractors, it suggests that Wal-Mart may have been expressly included as a third party beneficiary to the Geotechnics-M&C contract. Indeed, unless such a direct benefit was conferred in the subcontract, Wal-Mart may have an additional breach of contract claim against M&C.

---

[1] Geotechnics attached to its reply a letter dated November 19, 1999 that it sent to M&C regarding the subsurface investigation it proposed to perform on the site. Geotechnics asserts that this letter shows that it did not agree to assume any obligations to Wal-Mart. A close reading of the letter suggests that this is not necessarily the case. In the letter, Geotechnics makes reference to "*their* [Wal-Mart's] guidelines" and "the Retailer's guidelines," suggesting that they knew and intended to confer a benefit upon Wal-Mart. Letter, at 1-2 (emphasis added). On the other hand, the letter closes with the expressed hope that "this information is satisfactory for *your* purposes...." Letter, at 3 (emphasis added). However, as Geotechnics does not claim that this letter constitutes the entirety of its formal agreement with M&C, it is premature to attempt to glean any significant meaning from this missive.

4

There is sufficient information pled in the complaint to raise a valid question as to whether Geotechnics and M&C evinced an intent to directly benefit Wal-Mart. Accordingly, the motion to dismiss will be denied and Wal-Mart will be permitted to go forward to the discovery phase as to this count.

*Breach of Implied Warranty*

Wal-Mart alleges that the defendants breached their implied guarantees that the lot was suitable, that the soil tests were accurate, and that their work would be done in a workmanlike manner. F&R argues that Wal-Mart has no claim against it for breach of implied warranty because the complaint alleges only that F&R was responsible for "construction testing," not project design, and thus it could not have made a warranty regarding the suitability of the project site. Geotechnics asserts that Wal-Mart's claim fails as to it because it had no privity with Wal-Mart, and plaintiffs are only entitled to recover economic damages where privity of contract exists. Blake Constr. Co., Inc. v. Alley, 233 Va. 31, 35, 353 S.E.2d 724 (1987) ("The parties involved in a construction project resort to contracts and contract law to protect their economic expectations. Their respective rights and duties are defined by the various contracts they enter."). M&C contends that the breach of warranty claim fails to state a claim because the contract between M&C and Wal-Mart specified the standard of care required of M&C, and there is no further warranty implied by law. See Comptroller of Va. v. King, 217 Va. 751, 760, 232 S.E.2d 895 (1977). Wyatt echoes Geotechnics in asserting that because there was no privity between Wyatt and Wal-Mart, Wal-Mart is not entitled to recover economic losses.

Wal-Mart asserts that it has either contractual privity or enjoys third party beneficiary status with all of the defendants, and therefore is entitled to sue each of them on a breach of implied warranty theory. This argument is predicated on the established rule that "in building and

5

construction contracts it is implied that the building shall be erected in a reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose." See Willner v. Woodard, 201 Va. 104 (1959); Mann v. Clowser, 190 Va. 887, 901 (1950), *citing* 17 C.J.S. CONTRACTS, § 329, at 781; Goddard v. Protective Life Corp., 82 F. Supp. 2d 545, 556 (E.D. Va. 2000). Wal-Mart further argues that it stands in the shoes of M&C for purposes of enforcing the Geotechnics-M&C contract, including any warranties implied therein. Citing Virginia Code § 55-22, Wal-Mart claims that its third party beneficiary status confers the privileges associated with privity and therefore entitles it to sue on the implied warranty of fitness for a particular purpose. See Bank of America v. Musselman, 240 F. Supp. 2d 547, 554 (E.D. Va. 2003) ("[T]he privity requirement may be satisfied through a showing by the non-party that he is a third-party beneficiary of the contract."); Maersk Line Ltd. v. CARE and ADM, Inc., 271 F. Supp. 2d 818, 826-27 (E.D. Va. 2003) (implied warranty of workmanlike performance is conditional on the existence of a third party beneficiary relationship). No defendant has identified any authority to the contrary.

F&R claims that the breach of implied warranty does not apply to it because it merely agreed to provide construction testing, not actual construction design, and therefore the warranty of reasonable fitness for its intended purpose should not be applied to its contract. No authority has been produced to support this argument, and thus, Wal-Mart's rebuttal that "'Virginia law has recognized an implied warranty in the provision of services in the context of construction contracts,'" must prevail. Goddard, 82 F. Supp. 2d at 556.

Consequently, at this juncture, the court concludes that the breach of implied warranty claims must withstand the motions to dismiss. As to Fielden, F&R, and M&C, there remains a

6

material issue of fact to be resolved, and so the motion to dismiss the breach of warranty count as to these defendants will also be denied.

*Constructive Fraud*

Wal-Mart's claim for constructive fraud is based on its assertions that the statements made by the defendants were false at the time they were made, and that Wal-Mart relied to its detriment on these statements. The defendants move to dismiss this claim on the grounds that Wal-Mart has not pled a separate tort cause of action, but only restated its contract claim, and that Wal-Mart has insufficiently pled fraud under Federal Rule of Civil Procedure 9(b).

As to the question of the nature of the claim in Count VI, it is clear that, in Virginia, the law "distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract." Lissmann v. Hartford Fire Ins. Co., 848 F.2d 50, 53 (4th Cir. 1988); Colonial Ford Truck Sales, Inc. v. Schneider, 228 Va. 671, 325 S.E.2d 91 (1985). Wal-Mart asserts that the defendants knew or should have known of the lack of truth in the statements that they made regarding: (1) the feasibility of building the parking lot in Bonsack, Virginia on the current site; (2) the adequacy of the plans to prevent soil movement; (3) the soil treatments necessary; and (4) the quality of the fill soils used to construct the slopes. The issue here is whether these statements are such that they could have been false when made.

In McMillion v. Dryvit Systems, Inc., 262 Va. 463, 552 S.E.2d 364 (2001), the Virginia Supreme Court held that all alleged misrepresentations must be considered in context. The McMillion Court determined that statements in an advertising brochure were merely opinions about how the defendant's product might work, not misrepresentations of present facts. Id. at 472. However, in Tate v. Colony House Builders, Inc., 257 Va. 78, 508 S.E.2d 597 (1999), the

Case 7:06-cv-00133-GEC   Document 64   Filed 07/21/06   Page 7 of 10   Pageid#: 469

Court used the test of whether the statements in question could be determined factually as the benchmark to determine whether the statements were of present facts sufficient to support a cause of action for constructive fraud or mere opinions and puffery. Id. at 83-84. The Court also reiterated that "[t]here is no certain rule by the application of which it can be determined when false representations constitute matters of opinion or matters of fact, but each case must in a large measure be adjudged on its own facts." Id. at 83, *quoting* Packard Norfolk, Inc. v. Miller, 198 Va. 557, 562-63, 95 S.E.2d 207 (1988).

Evaluating the allegedly fraudulent statements in context, it appears that the claim for constructive fraud cannot stand, because the statements are "predicated upon future events ... [that, in general,] cannot form the basis of an action for constructive fraud." Tate, 257 Va. at 84. Wal-Mart alleges that the defendants "misrepresent[ed] to Wal-Mart that the parking lot *could* be built in Bonsack, Virginia on the current site." Complaint, at ¶ 43 (emphasis added). This is a statement regarding a future event. Furthermore, when evaluated against the backdrop of the three following alleged statements, it becomes clear that the defendants intended this statement only as one of opinion, not fact. Those statements indicate that the parking lot had not yet been built, and that soil treatments would need to be performed and fill soils utilized prior to the satisfactory completion of the lot. As a practical matter, there were simply too many variables and subsequent conditional occurrences required to render the statement regarding the feasibility of building the lot on the current site a factual one. *Cf.* Tate, 257 Va. at 83-84 (holding that statements that "the new dwelling house was free from structural defects; ... the new dwelling house was constructed in a workmanlike manner and; ... the new dwelling house was fit for habitation" were representations of "the present quality or character of the property"). Wal-Mart's claim for constructive fraud is therefore essentially a restatement of its contract claim and

8

it will not stand. See Filak v. George, 267 Va. 612, 618 (2004) ("[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts.").

The defendants also assert that Wal-Mart has insufficiently pled the fraud count. As the defendants note, Wal-Mart has not pled the time, place, and contents of the representation, nor has it identified who made the statement. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Wal-Mart merely states that, pursuant to Rule 8(a), it is only required to give a short and plain statement showing that it is entitled to relief. In addition, Wal-Mart claims that it does not have sufficient information to plead more, because only discovery will uncover further information relating to the claim. This claim is rather disingenuous, as Wal-Mart's position is that the representations were made directly to it, which should enable Wal-Mart to plead the time, place, content, and persons involved with particularity. Thus, for this reason as well, the pleading is deficient and the claim will be dismissed.

*Attorney's Fees*

With respect to the claim for attorney's fees, Wal-Mart stipulates that it only seeks attorney's fees with respect to the constructive fraud count. In its reply, Wal-Mart states that it "only seeks to be awarded 'attorney's fees, expenses and costs' for the constructive fraud claim." As a consequence of the dismissal of the claim for constructive fraud, this claim for attorney's fees will also be dismissed.

## Conclusion

For the foregoing reasons, the breach of express warranty claims will go forward as to the defendants implicated in Counts VII-IX; the breach of implied warranty claim will remain as to all of the defendants; and the third party beneficiary claim will be permitted to go forward as to

9

both Geotechnics and Wyatt. The constructive fraud claim will be dismissed. The motion to dismiss the claim for attorney's fees will be granted.

DATED this 20th day of July, 2006.

_____
United States District Judge